IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OYESOLA BELLO,<br>      Petitioner,<br><br>v.<br><br>LORIE DAVIS, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Div.,<br>      Respondent. | §<br>§<br>§<br>§   CASE NO. 3:17-CV-3006-N-BK<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States magistrate judge for pretrial management, including a recommended disposition of Petitioner Oseyo Bello's petition for writ of habeas corpus under 28 U.S.C. § 2254. Upon review of the relevant pleadings and applicable law, the habeas corpus petition should be **DENIED**.

**I.   BACKGROUND**

Petitioner Oseyo Bello pleaded guilty to aggravated kidnapping, and the trial court deferred the adjudication of his guilt, sentencing him to 10 years' community supervision. Doc. 13-16 at 59-60. On July 31, 2015, the trial court revoked Bello's deferred adjudication probation, adjudicated him guilty, and sentenced him to 40 years' imprisonment. *State v. Bello*, No. F571298M (194th Jud. Dist. Ct., Dallas Cty., Tex., July 31, 2015), *aff'd*, No. 05-15-01170 CR, (Tex. App.–Dallas 2016, no pet.). Doc. 13-1 at 22-23. Bello did not file a petition for discretionary review. Doc. 1 at 2. On July 19, 2017, the Texas Court of Criminal Appeals

(TCCA) denied state habeas relief, without a written order, on the findings of the trial court.[1]  *Ex Parte Bello*, No. WR-87,035-01, Doc. 13-14.

Bello filed a timely Section 2254 petition on October 13, 2017.  Doc. 1.  He alleges that due to prosecutorial misconduct, he was denied his right to due process.  Doc. 1 at 5; Doc. 2 at 6-12.  Respondent filed a response, Doc. 12, and Bello filed a reply, Doc. 14.

## II.     FEDERAL HABEAS CORPUS PROCEEDINGS

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow.  When reviewing state proceedings, "federal courts do not sit as courts of appeal and error for state court convictions."  *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).  A person seeking federal habeas corpus review must assert a violation of a federal constitutional right.  *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993).  Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Federal habeas corpus relief for state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The provisions of Section 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable

---

[1] A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits.  *Singleton v. Johnson*, 178 F.3d 381, 384(5thCir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits, while a "dismissal" means the claim was declined on grounds other than the merits).

application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *see Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In order to obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Richter*, 562 U.S. at 102-03. A petitioner must show that there was no reasonable basis for the state court to deny relief. *Id.* at 98.

    A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Williams*, 529 U.S. at 404. A state court's factual findings "shall be presumed to be correct" unless petitioner carries the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

### III.   CLAIM

    Bello argues the prosecutor committed misconduct by sponsoring false testimony at the revocation hearing. Doc. 2 at 4-12. Specifically, Bello argues that the testimony of Kennedy Muoki, Bello's alleged victim, "was false and it was so blatant that the State either must, or

3

should have known." Doc. 2 at 7. In support of his claim, Bello delineates three instances of witness testimony: 1) Muoki's testimony at Bello's revocation hearing; 2) Officer Hawkins' testimony at the revocation hearing as to what Muoki had told him about the alleged aggravated robbery; and 3) Muoki's testimony at Bello's subsequent criminal trial. Doc. 2 at 7-8. Bello states:

> At Bello's revocation hearing, Muoki testified that as he got out of his car in his apartment complex parking lot at 3:00 AM on February 19, 2015, a man later identified as Bello pointed a gun at his head and demanded his money. 05RR2: 11, 14-15. Muoki testified he gave Bello "a few" hundred dollars. 05RR2: 15-16. After Bello fled, Muoki himself ran but then slipped and fell. 05RR2: 18-21. At this point, Muoki found keys on the ground. 05RR2: 18. Muoki testified that while he was on the phone with the police, Bello then returned, looking for his keys, but then again fled, without saying anything, when he saw Muoki was with another man and on the phone. 05RR23-24.
>
> To the responding police officer, by contrast, Muoki stated Bello held a gun by his side, and that Bello patted him down searching for valuables or weapons. 05RR2: 44-45; 15RR2: 25. Furthermore, Muoki told the officer he fell down immediately after exiting his vehicle, while Bello was still present, not while running away. 05RR2: 52.
>
> Finally, at Bello's trial, on the aggravated robbery charge, Muoki testified that Bello had stolen $700-800, and that when he found the keys on the ground he immediately knew they belonged to Bello. 15RR2: 22, 28. Muoki testified that Bello returned and demanded his keys from Muoki, but abandoned the pursuit when the police arrived. 15RR2:28. Muoki repeated his claim to police that Bello patted him down during the robbery. 15RR2:21.

*Id*.

To demonstrate a due process violation resulting from the government's presentation of false or misleading testimony, a petitioner "must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997). However, "[c]onflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v. Johnson*,

4

242 F.3d 605, 609 (5th Cir. 2001) (citation omitted). Rather, it creates a credibility issue to be resolved by the trier of fact. See Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990).

Here, while Bello is correct that portions of Muoki's testimony varied between Bello's revocation hearing and subsequent criminal trial, Bello fails to explain how this illustrates Muoki's testimony at the revocation hearing was false. Bello apparently invites the Court to assume that Muoki's testimony at Bello's criminal trial must have been accurate and, thus, his testimony at the revocation hearing was false. However, it is not the Court's duty to make such an assumption, but rather, Bello's burden to demonstrate Muoki's testimony at the revocation hearing was "actually false." Fuller, 114 F.3d at 496. Additionally, because Bello's criminal trial took place after his revocation hearing, see Doc. 2 at 2-4, Bello cannot demonstrate that, based on Muoki's later trial testimony, the prosecutor at Bello's revocation hearing knew Muoki's testimony was false. Consequently, Bello has failed to demonstrate a due process violation. See Fuller, 114 F.3d at 496 (petitioner must show "that the prosecution knew the witness's testimony was false").

Regarding the differences between Muoki's testimony and Officer Hawkins' testimony at Bello's revocation hearing, any discrepancy in witness-testimony merely created a credibility issue for the trier of fact. See Koch, 907 F.2d at 531. As with Muoki's testimony at the revocation hearing and criminal trial, Bello appears to invite the Court to assume Officer Hawkins' testimony was completely accurate, and thus, Muoki's testimony was false. Again, it is Bello's burden to prove that the complained of testimony was actually false. Fuller, 114 F.3d at 496. Again, he has failed to meet that burden.

The state habeas court made the following determinations:

> In his sole ground for relief, the Applicant alleges that the complainant in the aggravated robbery offense testified falsely by giving different accounts of the

offense in statements made to the police, at the revocation hearing, and in the aggravated robbery trial. *See* Writ Application p. 6

1. The Court notes that the use of material, false evidence to procure a conviction violates a defendant's due-process rights under the Fifth and Fourteenth Amendments to the United States Constitution. *Ex parte De La Cruz,* 466 S.W.3d 855, 866 (Tex. Crim. App. 2015)

2. The Court notes that a conviction based on such materially false evidence results in a due process violation, regardless of whether the falsity of the evidence is known to the State. *Id.*

3. The Court notes that an Applicant must plead and prove facts which entitle him to relief and that the Applicant must prove his claim by a preponderance of the evidence. *Ex parte Rains,* 555 S.W.2d 478 (Tex. Crim. App. 1976).

4. The Court notes that an Applicant must show, or at least allege, the detailed facts which give rise to, and compel each legal conclusion that entitles him to relief. *Ex parte Hogan,* 556 S.W.2d 352 (Tex. Crim. App. 1977)

5. The Court notes that review of false testimony claims is different from other cognizable habeas claims. The first prong is whether the testimony was false, and the proper question in such cases is whether the testimony, taken as a whole, "gives the jury" or in this case the trier of fact, a false impression." *Ex parte Chavez,* 371 S.W.3d at 208 (citing *Ex parte Ghahremani,* 332 S.W.3d 470, 478 (Tex. Crim. App. 2011); *Alcorta v. Texas,* 355 U.S. 28, 31 (1957). The second prong is materiality, not harm. An applicant must show the false testimony was material and thus it was reasonably likely to influence the judgment of the trier of fact.

6. The Court notes that at the revocation hearing, the complainant Kennedy Muoki, testified that as he got out of his car in his apartment complex parking lot at 3:00 A.M. on February 19, 2015, Applicant pointed a gun at his head and demanded his money. *See* Exhibit A 05RR2: 11, 14-15. Muoki testified he gave Applicant "a few" hundred dollars. 05RR2: 15-16. After Applicant fled, Muoki himself ran but then slipped and fell. 05RR2:18-21. At this point, Muoki found keys on the ground. 05RR2: 18. Muoki testified that while he was on the phone with the police, Applicant then returned looking for his keys, but then again fled, when he saw Muoki with another man and on the phone. 05RR2: 23-24.

7. The Court notes that Officer Hawkins, the responding patrol officer, testified that Muoki stated that Applicant held a gun by his side, and that Applicant patted him down searching for valuables or weapons. 05RR2: 44-45. Furthermore, Muoki told the officer that he fell down immediately after exiting his vehicle while Applicant was still present, not while running away. *See* Exhibit A 05RR2: 52; Exhibit B 15RR2: 76.

8. The Court notes that at Applicant's trial on the aggravated robbery charge, Muoki testified that Applicant had stolen $700-$800, and that when he found the keys on the ground he immediately knew they belonged to Applicant. 15RR2: 22, 28. Muoki testified that Applicant returned and demanded his keys from Muoki, but abandoned the pursuit when the police arrived. 15RR2: 28. Muoki testified that Applicant patted him down during the robbery. 15RR2: 21.

9. The Court finds that the Applicant has failed to prove by a preponderance of the evidence that the testimony of Muoki was false. Muoki's testimony taken as a whole as supported by the record does not support a finding that the trier of fact was given a false impression as is required by the *Weinstein* first prong.

10. The Court notes that the record does reflect inconsistencies in Muoki's testimony at Applicant's revocation hearing as compared to trial. At the revocation hearing, Muoki testified that he gave Applicant "a few" hundred dollars, whereas at Applicant's trial, Muoki testified that Applicant had stolen $700-$800. 05RR2: 15-16; 15RR2: 22. Inconsistencies also exist as to Muoki's testimony at the revocation hearing that Applicant pointed a gun at his head and his trial testimony that Applicant held a gun by his side. 05RR2: 44-45; 15RR2: 25. Despite the inconsistencies, Muoki's testimony taken as a whole was that Applicant took money from him while holding a gun.

11. The Court finds that the Applicant's claim for relief is without merit and not supported by the record and recommends that said claim be herein denied.

*  *  *

1. This Court finds that Applicant has not been denied any rights guaranteed to him by the United States Constitution.

2. This Court finds that applicant is lawfully confined and restrained of his liberty. This Court is of the opinion that this Application for Writ of Habeas Corpus is totally without merit and recommends that the same be denied.

Doc. 13-16 at 43-46.

On the record before this Court, Bello fails to demonstrate the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03 (2000). He fails

7

to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98.[2]

Accordingly, Bello's due process claim should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Bello's petition for writ of habeas corpus should be **DENIED**.

**SO RECOMMENDED** on January 31, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

---

[2] To the extent Bello relies on *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991), that holding of the Court of Appeals for the Second Circuit is not binding on this Court. Nevertheless, *Wallach* is distinguishable as it concerns a 1991 direct appeal. As such, it was not adjudicated under the AEDPA standard that governs this case.